NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**DROPBOX, INC., ORCINUS HOLDINGS, LLC,**
*Plaintiffs-Appellants*

**v.**

**SYNCHRONOSS TECHNOLOGIES, INC.,**
*Defendant-Appellee*

---

2019-1765, 2019-1767, 2019-1823

---

Appeals from the United States District Court for the Northern District of California in Nos. 5:18-cv-03685-LHK, 5:18-cv-06199-LHK, Judge Lucy H. Koh.

---

Decided:  June 19, 2020

---

GREGORY H. LANTIER, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, DC, argued for plaintiffs-appellants.  Also represented by RICHARD ANTHONY CRUDO; ELIZABETH BEWLEY, Boston, MA.

NICHOLAS HUNT JACKSON, Dentons US LLP, Washington, DC, argued for defendant-appellee.  Also represented by MARK LEE HOGGE, RAJESH CHARLES NORONHA; KEVIN R. GREENLEAF, Lovettsville, VA; SARAH S. ESKANDARI, San Francisco, CA.

———————————

Before PROST, *Chief Judge,* WALLACH and HUGHES, *Circuit Judges.*

HUGHES, *Circuit Judge.*

Dropbox, Inc., and its wholly owned subsidiary, Orcinus Holdings, LLC, appeal the district court's decision holding three of their patents ineligible under 35 U.S.C. § 101. We agree with the district court that the patents claim abstract ideas, and that the claims provide no inventive concept transforming the abstract idea into patentable subject matter. We therefore affirm the district court's decision.

I

In June 2018, Dropbox filed suit against Synchronoss Technologies, Inc., alleging infringement of three patents. *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 371 F. Supp. 3d 668, 677 (N.D. Cal. 2019). The three asserted patents, U.S. Patent Numbers 6,178,505, 6,058,399, and 7,567,541, relate to, respectively, "Secure Delivery of Information in a Network," "File Upload Synchronization," and a "System and Method for Personal Data Backup for Mobile Customer Premises Equipment." *See* '505 Patent, title; '399 Patent, title; '541 Patent, title.

Because Orcinus Holdings owns the '541 patent, Dropbox amended its complaint to remove the '541 patent, and Orcinus Holdings filed a suit asserting the '541 patent against Synchronoss. *Dropbox,* 371 F. Supp. 3d at 677–78; *Orcinus Holdings, LLC v. Synchronoss Techs., Inc.*, 379 F. Supp. 3d 857, 861 (N.D. Cal. 2019). Synchronoss moved to dismiss the claims, arguing that the patents are invalid due to their ineligibility under 35 U.S.C. § 101. *Dropbox,* 371 F. Supp. 3d at 678. The district court agreed with Synchronoss, issuing orders holding all three patents

invalid for failing to claim eligible subject matter. *See id.* at 700; *Orcinus Holdings*, 379 F. Supp. 3d at 883.

Dropbox[1] timely appealed. We have jurisdiction over the consolidated appeals under 28 U.S.C. § 1295(a)(1).

II

We review a district court's dismissal for failure to state a claim under the law of the regional circuit—here, the Ninth Circuit. *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1347 (Fed. Cir. 2016). The Ninth Circuit reviews the grant of a motion to dismiss de novo. *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012). In evaluating a motion to dismiss, the district court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

"Patent eligibility under 35 U.S.C. § 101 is ultimately an issue of law we review de novo. [But] [t]he patent eligibility inquiry may contain underlying issues of fact." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). For example, "[w]hether a claim 'supplies an inventive concept that renders a claim "significantly more" than an abstract idea to which it is directed is a question of law' that may include underlying factual determinations." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 773 (Fed. Cir. 2019) (quoting *BSG Tech LLC v. Buyseasons, Inc.*, 899

---

[1]    As did Orcinus Holdings; we refer to Orcinus collectively with its parent company as Dropbox.

F.3d 1281, 1290 (Fed. Cir. 2018), in turn quoting *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 218 (2014)).

"Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. But the Supreme Court has "long held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice*, 573 U.S. at 216.

"To determine whether claimed subject matter is patent-eligible, we apply the two-step framework explained in *Alice*." *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1149 (Fed. Cir. 2019) (citation omitted). In the first step, we "determine whether the claims at issue are directed to a patent-ineligible concept" such as an abstract idea. *Alice*, 573 U.S. at 218. If the claims are not directed to an abstract idea, the claims are patent eligible. If the claims are directed to an abstract idea, we proceed to the second step, in which we "examine the elements of the claim to determine whether it contains an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Id.* at 221 (internal quotation marks omitted).

Because the patents lack common features, we discuss each patent's eligibility individually. We then address an issue common to all three patents: the sufficiency of Dropbox's factual allegations of the patents' inventiveness.

A

The '505 patent, entitled "Secure Delivery of Information in a Network," was filed on March 4, 1998, and claims priority from March 1997 provisional applications. '505 Patent, cover sheet. The district court found the '505 patent "generally relate[d] to data security" and "specifically directed to 'providing only as much authentication

and encryption security as is required for a given user, a given path through the network [to a given information resource], and a given [information] resource.'" *Dropbox*, 371 F. Supp. 3d at 675 (quoting '505 Patent at col. 5 l. 67–col. 6 l. 3) (alterations in original).

The district court found independent claim 1 representative, *id.* at 694; claim 1 recites

> 1. Apparatus that provides an information resource in response to a request from a user, the request including an identification of the user according to a mode of identification and the apparatus comprising:
>
> access control information including
>
> a sensitivity level associated with the resource and
>
> a trust level associated with the mode of identification; and
>
> an access checker which permits the apparatus to provide the resource only if the trust level for the mode of identification is sufficient for the sensitivity level of the resource.

'505 Patent at col. 49 ll. 2–13. Dropbox argues on appeal that the district court should have separately considered the eligibility of dependent claim 8, Appellants' Br. 37–38; claim 8 recites

> 8. The apparatus set forth in any one of claims 1 through 4 wherein:
>
> the access request is transferred via a path in a network; and
>
> the access control information further includes
>
> a path trust level associated with the path and
>
> an encryption trust level associated with an encryption method,

the access checker further permitting the apparatus to provide the resource only if either the path trust level is sufficient for the sensitivity level or the access request has been encrypted with an encryption method whose encryption trust level is sufficient for the sensitivity level.

'505 Patent at col. 49 ll. 54–67.

The district court found claim 1 representative because "all the claims are substantially similar in that they are apparatus claims for a device providing data security associated with a user in response to a request for data from the user." *Dropbox*, 371 F. Supp. 3d at 695. The court rejected Dropbox's arguments that claim 8 has distinctive details because "[c]laim 8 is encapsulated in claim 1's requirement that the access checker allow access to a data resource only if prerequisite security levels are met." *Id.*

On the merits, the district court held that claim 1 was directed to "(1) associating a security level with a data resource, (2) associating a security level with a mode of identification of a user, and then (3) ensuring that the user's security level is sufficiently high to meet the security level of the data resource to access the data resource." *Id.* Such a focus constituted an abstract idea because "the claim does not provide any limits that curb how the apparatus performs these functions" and "invokes computers merely as tools to execute fundamental data access control principles," "fall[ing] squarely within the [abstract] category of controlling access to data." *Id.* at 696. The district court then found that claim 1 lacked an inventive concept because it claimed generic elements, in "purely functional terms," to "implement the abstract idea." *Id.* at 698–99.

Whether we consider claim 1 alone, or both claim 1 and claim 8, we agree with the district court that the claims of the '505 patent are ineligible. Both claim 1 and claim 8 are directed to abstract ideas. "At step one of the *Alice* framework, we 'look at the focus of the claimed advance over the

prior art to determine if the claim's character as a whole is directed to excluded subject matter.'" *Koninklijke*, 942 F.3d at 1149 (quoting *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016)). Claim 1 and claim 8's claimed advance, the "access checker" element, *see* Appellants' Br. 24, offers nothing but a functional abstraction. The specification—which refers not to an "access checker," but to an "access filter" to perform access checking—does little to instead define this abstraction as a technological solution. Instead, the specification largely treats the "access filter" as a black box. *E.g.,* '505 Patent at col. 2 l. 55–60 (describing the access filter as "a set of software and hardware components in the computer system which checks all requests from outside the internal network for information stored inside the internal network and only sends a request on into the internal network if it is from a source[] that has the right to access the information"). The technical aspects of the access filter, where present, are discussed only in terms of non-limiting embodiments. This is not enough to modify the focus of the claims. "[W]hen analyzing patent eligibility, reliance on the specification must always yield to the claim language in identifying [the] focus [of those claims]." *ChargePoint*, 920 F.3d at 766.

Claim 8's additional elements of a "path in a network," a "path trust level," and an "encryption trust level" redirect the focus of the claims towards a technological problem. But the claims still recite no technological solution. The access checker "black box" just considers additional factors. *See, e.g.*, '505 Patent at col. 19 ll. 37–50. "Improving security . . . can be a non-abstract computer-functionality improvement *if done by a specific technique* that departs from earlier approaches to solve a specific computer problem." *Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1348 (Fed. Cir. 2018), *as amended* (Nov. 20, 2018) (emphasis added). This is not a "specific technique" for improving a

computer, but a change in the abstraction providing the fundamental principles for access filters.

Dropbox makes much of passages in the specification asserting that the '505 patent solved a technological problem. But that is not enough. The patent has to describe *how* to solve the problem in a manner that encompasses something more than the "principle in the abstract." *See ChargePoint*, 920 F.3d at 769 (explaining that an invention may not be patent eligible if the "claims 'were drafted in such a result-oriented way that they amounted to encompassing the 'principle in the abstract' no matter how implemented'" (quoting *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1343 (Fed. Cir. 2018))); *see also Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1305 (Fed. Cir. 2018) ("[A] result, even an innovative result, is not itself patentable."). And, that solution has to be evident from the claims. *See ChargePoint*, 920 F.3d at 766.

Moving to step two, neither claim 1 nor claim 8 recites an inventive concept that would render its subject matter patent eligible. The district court's findings on claim 1—that it recites conventional elements in a purely functional manner, without implementation detail even in the specification, *see Dropbox*, 371 F. Supp. 3d at 698—apply to claim 8 with equal force. The additional elements of "path trust level" and "encryption trust level" in claim 8 merely provide additional criteria for the "access checker" to consider. *Cf. id.* at 695 (holding claim 1 representative of claim 8 because "[c]laim 8 similarly requires performance of the same basic process and is linked to the same idea as claim 1 because claim 8 discloses the access checker restricting access to the data resource based on the path the resource takes through the network [and the encryption level]").

When implemented, these elements may well provide a more "economically secure way to transmit data to a user over a network." Appellants' Br. 42. The problem here, compared to the patents in *BASCOM* and *Amdocs*, arises

from the manner in which the patent claims the "inventive concept." *See BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016); *Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288 (Fed. Cir. 2016). Our cases have consistently held that an "inventive concept" exists when a claim "recite[s] a specific, discrete implementation of the abstract idea" where the "particular arrangement of elements is a technical improvement over [the] prior art." *BASCOM*, 827 F.3d at 1350. This focus on specificity dovetails with concerns about preemption. *See Amdocs*, 841 F.3d at 1306 (finding claims eligible at step two because "they describe a specific, unconventional technological solution, narrowly drawn to withstand preemption concerns, to a technological problem"). Claims 1 and 8 of the '505 patent, when read in light of the specification, do not withstand this requirement for a specific, discrete implementation of the abstract idea. At best, the claims recite the application of an abstract idea using conventional and well-understood techniques specified in broad, functional language. But we have held that the abstract idea to which a claim is directed cannot supply the inventive concept, and, moreover, if a claim amounts to merely "the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of the abstract idea." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290–91 (Fed. Cir. 2018).

We therefore affirm the district court's decision holding the '505 patent invalid as ineligible under § 101.

B

The '399 patent, entitled "File Upload Synchronization," was filed on August 28, 1997, and issued May 2, 2000. '399 Patent, cover sheet. The district court found the patent "directed to combining the user interface of an interactive connection, like a website, with a file upload connection, such as an FTP (file transfer protocol)

10          DROPBOX, INC. v. SYNCHRONOSS TECHNOLOGIES, INC

connection" or "[i]n layman's terms . . . combining a user-friendly website interface with a file upload connection so that users who are not tech-savvy can easily upload data to a service provider." *Dropbox*, 371 F. Supp. 3d. at 673–74. The district court found claims 1, 25, 43, and 46 representative. *Id.* at 675 n.1.  On appeal, Dropbox focuses on only claims 1 and 25. *See, e.g.*, Appellants' Br. 51, 54.  Claim 1 recites

> 1. A method of synchronizing an interactive connection and a non-interactive data transfer connection between a client and a service provider, comprising:
>
> creating an interactive connection;
>
> creating a data transfer connection; and
>
> generating a single session ID for the two connections, which ID associates between the two connections.

'399 Patent at col. 11 ll. 58–64.  Claim 25 recites

> 25. Apparatus for uploading data files, comprising:
>
> a file upload connection server;
>
> an interactive connection server; and
>
> a synchronizer which synchronizes the operation of respective connections formed by the file upload connection server and by the interactive connection server.

*Id.* at col. 13 ll. 19–24.

The district court found claim 1 "simple" and directed to "the abstract idea of exchanging data using a computer," in part because claim 1 recites elements in only "very broad, functional terms." *Dropbox*, 371 F. Supp. 3d. at 687. According to the court, the patent's claimed advance—generating a single session ID linking the interactive

connection and the data transfer connection—"is simply a label by which the connections are identified[,] . . . hardly a specific improvement on computer functionality or a nongeneralized computer activity" but "the well-known and abstract concept of data recognition." *Id.* at 688. The court found that, although claim 25 "tacks onto" claim 1 a "synchronizer" limitation, the limitation recites only "the process of identifying the data exchanged[,] . . . an abstract idea involving the recognition of data." *Id.* at 688–89. The court further held that the claims' elements did not provide an inventive concept individually or in combination. *Id.* at 690–91.

We again agree with the district court's analysis. Claims 1 and 25 are directed to an abstract idea. Dropbox has conceded the abstract character of all claimed elements except the limitations of (1) the "generating a single session ID for the two connections, which ID associates between the two connections" step in claim 1, and (2) the "synchronizer which synchronizes the operation of respective connections formed by the file upload connection server and by the interactive connection server" element in claim 25. Dropbox alleges that the district court ignored the "importance of the specifically disclosed *synchronization* process between, for example, a WWW session and an FTP session, which enabled large uploads to take place in a secure and user-friendly manner." Appellants' Br. 48–49.

Whatever result the patent attributes to the synchronizer and session ID matters little because the '399 patent claims its improvements in an abstract manner. To be patent eligible, software inventions must make "*non-abstract improvements* to existing technological processes and computer technology." *Koninklijke*, 942 F.3d at 1150 (emphasis added). To claim a technological solution to a technological problem, the patent must actually *claim* the *technological solution.* Neither a single session ID associating between the two connections nor a synchronizer

synchronizing the operation amount to a *non-abstract* improvement—that is, a technological solution. "The 'novelty' of any element or steps in a process, or even of the process itself, is of no relevance in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter." *Diamond v. Diehr*, 450 U.S. 175, 188–89 (1981).

Nothing in the claims—or the specification's definition of the claimed elements—delineates the session ID or the synchronizer in a manner providing a specific technique for how these "combin[e] the advantages of the FTP and WWW sessions while avoiding their respective drawbacks," as Dropbox suggests. Appellants' Br. 24. Instead, the claims and written description relate to the functional result of the claimed abstractions. *See, e.g.,* '399 Patent at col. 3. ll. 38–42 ("In *a preferred embodiment* of the invention, the service provider includes a synchronizing process which supplies the unique session ID and synchronizes the operation of the FTP server and the WWW server." (emphasis added)), col. 4 ll. 34–37 ("Preferably, said synchronizer generates a single session ID for two associated sessions, each on a different one of said servers."). Even if it did provide meaningful detail, "a specification full of technical details about a physical invention may nonetheless conclude with claims that claim nothing more than the broad law or abstract idea underlying the claims, thus preempting all use of that law or idea." *ChargePoint*, 920 F.3d at 769.

Nor do claims 1 or 25 recite an inventive concept. According to Dropbox, the '399 patent describes a result of an "unconventional hybrid creation: one that combined the advantages of prior-art technologies without their disadvantages." Appellants' Br. 53. But the '399 patent does not meaningfully claim or even describe this "hybrid creation." Dropbox does not point to anything in the patent—much less the claims—that shows how the "single session ID" or "synchronizer" embody this purported inventive concept rather than the application of the abstract "synchronizer"

and "session ID" to otherwise routine and conventional technology. Just like with the '505 patent, the claims merely apply an abstract idea using conventional and well-understood techniques; such claims do not contain an inventive concept at step two. *See, e.g.*, *BSG Tech*, 899 F.3d at 1290–91.

We affirm the district court's decision holding the '399 patent invalid as ineligible under § 101.

C

The '541 patent, entitled "System and Method for Personal Data Backup for Mobile Customer Premises Equipment," was filed on October 19, 2005, and claims priority from an October 2004 provisional application. '541 Patent, cover sheet. The district court explained the '541 patent as directed to "uploading and downloading data from a [mobile device, such as a cellphone, PDA, or iPod] to a server by way of a mobile network." *Orcinus Holdings*, 379 F. Supp. 3d at 862. The parties agree independent claim 1 is illustrative. *See* Appellants' Br. 21–22; Appellee's Br. 14–15. Claim 1 recites

> 1. A method for backing up data stored on a mobile customer premises equipment comprising the steps of:
>
> storing data at the mobile customer premises equipment;
>
> formatting the data stored at the mobile customer premises equipment into fields by determining data fields, identifying which portions of said data correspond to a respective data field, and tagging said data[;]
>
> transmitting the data with a user ID from the mobile customer premises equipment across a mobile network to a server for storage;

14        DROPBOX, INC. v. SYNCHRONOSS TECHNOLOGIES, INC

> retrieving said data from said server across a mobile network in response to one of an expiration of time and request from said mobile customer premises equipment by transmitting said data to said mobile customer premises equipment; and
>
> transmitting said data to said mobile customer premises equipment by transmitting the data in more than one information signal and sequentially numbering each of said information signals.

'541 Patent at col. 10 l. 52–col. 11 l. 4.

According to the district court, "[c]laim 1 is straightforward" and "abstract because first, it only discloses generalized steps to carry out generic computer functions, and second, because there are long-standing practices analogous to the claimed steps." *Orcinus Holdings*, 379 F. Supp. 3d at 874. In a short, alternative analysis, the district court found claim 1 abstract because it recited essentially the same process as a person manually transferring data from one mobile device to another, with the person herself acting as the "server." *Id.* at 878–79. In its longer, main analysis, the district court focused on how the features corresponded to generalized steps carrying out generic computer functions. The district court pointed out how the specification itself declares each element of the claim to be a generic computer component. *Id.* at 874–75. The district court found that the patent fails to provide specific explanations or technical details describing how it improves the functionality of the generic components; it therefore found claim 1 directed to an abstract idea because "claim 1 discloses well-known steps to be executed on generic computing devices." *Id.* at 877. The court further found that none of the components individually claimed an inventive concept because they were all concededly generic. *Id.* at 879–80. Nor, per the court, did the elements do so as an ordered combination, because they were arranged in a conventional manner. *Id.* at 881.

We agree with the district court once more. Claim 1 is directed to an abstract idea. The nature of the "claimed advance" of the patent—which Dropbox asserts to be "a unified tag and data structure," including transmitting data with an accompanying user ID and "remote server synchronization for wirelessly backing up data," Appellants' Br. 20–21—reveals an abstract idea at the heart of claim 1. "'[G]eneralized steps to be performed on a computer using conventional computer activity' are abstract[.]" *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1338 (Fed. Cir. 2016)), *cert. denied*, 138 S. Ct. 672 (2018). "Formatting" data, "tagging" data, "transmitting" data, and "retrieving" data are generalized steps to be performed on a computer using conventional computer activity. Their combination may allow "wireless backup of cellphone data." Appellants' Br. 56 (emphasis omitted). But the claim provides less of "a specific means or method" than "a result or effect that itself is the abstract idea and merely invokes generic processes and machinery." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017).

Nor do these data tagging and remote synchronization steps yield an inventive concept. The '541 patent itself teaches that the two allegedly inventive concepts were routine and conventional. '541 Patent at col. 3 ll. 24–29, 34–36. Dropbox argues that the combination of the two concepts is inventive because "[t]he '541 patent's data structure allows the data to be formatted in a way that makes data transfer reliable and efficient." Appellants' Br. 60. But "[t]o save a patent at step two, an inventive concept must *be evident in the claims*." *Two-Way Media*, 874 F.3d at 1338 (emphasis added). But no data structures—much less any inventive data structures—are evident in the claims. "[F]ormatting the data . . . into fields . . . and tagging said data" as recited in claim 1 does not describe an inventive data structure. The specification itself

contradicts Dropbox's claim that the patent teaches an inventive data structure, explaining that the data structure "may be defined by a [mobile device] manufacturer," and that methods known in the art (such as XML or html) "may be used to create the data structure." '541 Patent at col. 3 ll. 36–37, col. 6 ll. 60–61.

We affirm the district court's decision holding the '541 patent invalid as ineligible under § 101.

D

Dropbox argues, for all three patents, that it pled sufficient factual allegations of an inventive concept to defeat a motion to dismiss. The district court rejected this argument, holding that the complaints failed to allege "fact questions that cannot be resolved on a Rule 12 motion" for all three patents. *Dropbox*, 371 F. Supp. 3d at 693; *see id.* at 699–700; *Orcinus Holdings*, 379 F. Supp. 3d at 882. The district court explained that "the 5 paragraphs of the amended complaint to which [Dropbox] cites in [its] opposition vaguely allege how the '505 Patent [for example] is an advancement over the prior art." *Dropbox*, 371 F. Supp. 3d at 699. According to the district court, Dropbox presented "no *specific* factual allegations or references to the [patent] specification[s]—which might disclose that the invention is an improvement over the prior art . . . ." *Id.* For both the '505 and '399 patents, the district court held that the unsupported factual allegations constituted merely "attorney arguments . . . attempting to manufacture a factual question," and therefore were not sufficient to defeat a motion to dismiss. *Id.* at 700; *see id.* at 693. Regarding the '541 patent, the district court also found that Dropbox's attorney argument could not establish a factual dispute preventing dismissal "because the purported improvements over the prior art have not been captured in the claim language." *Orcinus Holdings*, 379 F. Supp. 3d at 882.

We agree with the district court that Dropbox's complaint asserts only conclusory allegations insufficient to survive a motion to dismiss. Dropbox's allegations restate the claim elements and append a conclusory statement that "nothing in the specification describes these concepts as well-understood, routine, or conventional." *E.g.,* First Amended Complaint ¶¶ 20–27, *Dropbox, Inc. v. Synchronoss Techs., Inc.*, No. 5:18-cv-03685-LHK, ECF No. 49 (N.D. Cal. Oct. 22, 2018). The allegations claim that each of the patents solves given technological problems, but never provide more support than a conclusory statement that "the inventions described and claimed . . . solved these problems," improved the art, "represented a significant advance over existing approaches[,] and were not well-known, routine, or conventional in the field" at the time of patenting. *E.g., id.* ¶¶ 50–51. These pleadings provide no more than a series of legal conclusion about the § 101 analysis. When considering a motion to dismiss, courts "must take all the factual allegations in the complaint as true"—but "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

"[A]ny allegation about inventiveness, wholly divorced from the claims or the specification" does not defeat a motion to dismiss; only "plausible and specific factual allegations that *aspects of the claims* are inventive are sufficient." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019) (emphasis added), *cert. denied sub nom. Garmin USA, Inc. v. Cellspin Soft, Inc.*, 140 S. Ct. 907 (2020). The complaint in *Cellspin* identified how the specific techniques recited in the claims were inventive. *See id.* at 1317–18. Dropbox's complaint, on the other hand, merely provides a conclusory allegation that "[t]he inventions described and claimed in the '505 [p]atent [for example] solved these problems," *e.g.,* Complaint ¶ 50, or that "[t]he '541 [p]atent [for example] describes and claims a number of novel and inventive approaches to data backup . . . captured in" the

claims of the patent, Complaint ¶ 23, *Orcinus Holdings, LLC v. Synchronoss Techs., Inc.*, No. 5:18-cv-06199-LHK, ECF No. 1 (N.D. Cal. Oct. 10, 2018). These sorts of conclusory pleadings are insufficient to survive a motion to dismiss.

## III

We have considered the parties' remaining arguments and find them unpersuasive. We affirm the district court's decisions holding the '505, '399, and '541 patents invalid as ineligible under § 101.

## AFFIRMED